IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| Deanna Stansfield, | ) ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) ) | CIVIL ACTION NO. H-04-4161 |
| O'Reilly Automotive, Inc., d/b/a O'Reilly Auto Parts | ) ) ) ) | |
| Defendant | ) | |

**MEMORANDUM AND ORDER**

Before the court is a motion for summary judgment brought by the Defendant, O'Reilly Automotive, Inc. (O'Reilly Automotive), against the Plaintiff, Deanna Stansfield (Stansfield). Doc. 14. The court has reviewed Exhibits 1-35 attached to the Defendant's motion (Doc. 14), Exhibits A-E attached to the Plaintiff's Response (Doc. 19), Exhibits 1-4 attached to the Defendant's reply (Doc. 20), and the disclosures attached to the Plaintiff's surreply (Doc. 21).

**I.   Summary judgment standard**

A party moving for summary judgment must inform the court of the basis of the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must establish that no dispute of material fact exists regarding

any of the essential elements of the claim or defense to warrant judgment in his favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986). If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment because the substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby*, 477 U.S. 248, 256-57 (1986). The moving party need not negate the opposing party's claims nor produce evidence showing the absence of a genuine issue of fact, but may rely on the absence of evidence to support essential elements of the opposing party's claims. *Celotex*, 477 U.S. at 323-25. However, "[o]n summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (citing *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)). A party seeking summary judgment may rely upon the complete absence of proof of an essential element if (1) the party seeking summary judgment has no access to evidence of disproof, (2) ample time has been allowed for discovery, and (3) the party opposing the motion for summary judgment bears the proof burden. *Fontenot,* 780 F.2d at 1195.

If the moving party establishes the absence of any dispute of material fact, then the burden shifts to the opposing party to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial. Fed. R. Civ. P. 56(c). The party opposing a motion for summary judgment may not rest on mere allegations or denials in its pleadings, but must produce affirmative evidence, and specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 256-157. The non-moving party may identify evidentiary

documents already in the record that establish specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). In reviewing evidence favorable to the party opposing a motion for summary judgement, a court should be more lenient in allowing evidence that is admissible, though it may not be in admissible form.

> That the defendants' response does not affirmatively state in the document itself that the [witnesses] are competent to testify as to the facts to which they swore does not necessarily doom their testimony. Affidavits are to be considered in conjunction with other types of evidence before the court. 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2738 at 467 (1983). Furthermore, the papers of a party opposing summary judgment are usually held to a less exacting standard than those of the moving party. Id. at 484. In previous cases we have accepted evidence from the party opposing summary judgment despite its failure to meet the technical requirements of rule 56(e). See, e.g., *Jackson v. State of Mississippi,* 644 F.2d 1142, 1144 (5th Cir.1981) (even though opposing party's affidavit did not conform to rule 56(e), the court did not reject his claim that there were issues of fact to be decided); *Whitaker v. Coleman,* 115 F.2d 305, 307 (5th Cir.1940) (non-moving party's proffered transcript from earlier trial sufficient to show outstanding issues of fact despite "defects in its certification and presentation"); see also *Albert Dickinson Co. v. Mellos Peanut Co.,* 179 F.2d 265 (7th Cir.1950) (plaintiff's verified petition sufficient to oppose summary judgment). Thus, so long as the record, taken as a whole, demonstrates that the [witnesses'] testimony meets the requirements of rule 56, it is properly before the court and should be considered on a summary judgment motion.

*Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d 77, 80 (5th Cir. 1988).

According to these legal principals, the court will assume, for the purpose of this motion, that Stansfield recalled every event perfectly and disregard any evidence that contradicts her admissible statements.

**II.     Background**

Stansfield worked for O'Reilly Automotive on several occasions, resigning and then returning to work.  In her most recent term of employment, Stansfield worked as a "driver specialist."  Because Stansfield was under 21 years old, O'Reilly Automotive imposed more safety requirements on her than it did on older employees.  Thus, when the door of Stansfield's truck was struck by another vehicle, she lost her eligibility to work as a driver specialist.  Nevertheless, O'Reilly Automotive decided to retain her until she regained her eligibility at 21.  It created a new position for her, but did not establish any formal requirements for that new position.  In practice, Stansfield appears to have responded to whatever needs the store faced, e.g., paperwork, tracking inventory, and cleaning.  Doc. 19, Exh. A, ¶6 (Declaration of Deanna Stansfield).  Even after Stansfield regained her eligibility to drive, she continued to perform these light duties.

Although formal, written policies established lifting requirements for each formally established position at O'Reilly Automotive, various supervisors at O'Reilly Automotive encouraged females to request help from male employees when lifting heavy objects. Id. at ¶¶9-10. Furthermore, Stansfield identified specific employees who were not subject to the formal lifting policies that O'Reilly Automotive mandated.  For example, Tillie Childress, an older employee, received assistance from other workers when lifting heavy objects.  Doc. 19, Exh. A, ¶23.  Paul Kosetka was offered the opportunity to "sit on a stool all day and run lines until you are ready to start stocking again," because his supervisor wanted him to, "just please come back to work!"  Id. at ¶24.  In fact, no employees were tested for their ability to lift any particular weight.  Id. at ¶25.

O'Reilly Automotive was not so lenient when Stansfield announced her pregnancy. Stansfield's supervisor, David Plaster (Plaster), threw up his hands, exclaiming, "what are we going to do now?"  Id. at ¶11.  Stansfield describes Plaster's demeanor as confrontational and negative.

Id.  He forbade Stansfield from asking for help when lifting objects.  Id. at ¶13.  In a written statement, Plaster claimed to have spoken with someone in the human resources department at O'Reilly Automotive who explained that pregnant employees were to be assigned lighter duties.  Doc. 19, Exh. E.  Despite this earlier possible attempt to accommodate Stansfield, when she provided Plaster with a note from a doctor limiting her to lifting no more than 20 pounds, he responded by first asking "what was the weight I told you?" then, after some indecision, deciding that she must lift 50 pounds, and finally concluding, "oh well, I guess you don't meet it.  So you can't come back to work."  Doc. 19, Exh. A at ¶18.  Consequently, Plaster compelled Stansfield to take unpaid medical leave.  Id. at ¶16.  O'Reilly Automotive terminated Stansfield's employment when her medical leave expired.

### III.     Legal analysis

Stansfield sues under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a).  Title VII "prohibits various forms of employment discrimination, including discrimination on the basis of sex."  *California Fed. Sav. & Loan Ass'n v. Guerra,* 479 U.S. 272, 276-77, 107 S.Ct. 683, 687, 93 L.Ed.2d 613 (1987).  Specifically, the Pregnancy Discrimination Act (PDA) prohibits discrimination, "because of or on the basis of pregnancy[.]"  42 U.S.C. § 2000e(k).  Courts analyze claims under the PDA as they do any violation of Title VII.  *See Garcia v. Woman's Hosp.,* 97 F.3d 810, 812-13 (5th Cir. 1996).  To survive a motion for a summary judgment, a plaintiff bringing a claim under Title VII must establish a prima facie case and may do so through direct or circumstantial evidence.  *See Urbano v. Continental Airlines, Inc.,* 138 F.3d 204, 206 (5th Cir. 1998), *cert. denied,* 525 U.S. 1000 (1999) (citations omitted).

### A. Stansfield produced direct evidence of discrimination.

For a remark to constitute direct evidence of discrimination, it "must, first, demonstrate discriminatory animus and, second, be made by a person primarily responsible for the adverse employment action or by a person with influence or leverage over the formal decisionmaker[.]" *Laxton v. Gap Inc.,* 333 F.3d 572, 583, n. 4 (5th Cir. 2003) (citations omitted).

In this case, O'Reilly Automotive assumes that Stansfield can establish her prima facie case only by presenting circumstantial evidence. However, Plaster's negative reaction to Stansfield's announcement is direct evidence of discrimination. He expressed dismay at her pregnancy even though he did not know how, or even whether, her pregnancy would limit her ability to continue performing those tasks that he had assigned to her. In the context of the conversation, Plaster asked not, "what are we going to do now," but, "what are we going to do now [that I know you're pregnant]?" If Plaster had made a remark with analogous implications regarding Stansfield's membership in almost any other protected class, his animus would be evident. For example, if a supervisor who had interacted with an employee only over the telephone or the internet finally met that employee and exclaimed, "what are we going to do now [that I know you're Asian (or any other racial group) or black (or any other color) or Hindu (or any other religion) or male (or female) or Irish (or any other national origin)]," then a court would be hard-pressed to classify such a remark as anything other than direct evidence of discriminatory animus establishing a prima facie case of a violation of Title VII.

Nevertheless, Plaster's remark could be interpreted to mean only, "what are we going to do now that you can't lift more than 20 pounds." However, Plaster did not know what limits would be placed on Stansfield nor did he know how much weight Stansfield's undefined job required her to lift. Instead, he simply reacted to her pregnancy and then manipulated Stansfield's

job requirements to exclude her from work: "what was the weight I told you? … [pause] … 50 pounds? … oh well, I guess you don't meet it. So you can't come back to work." The documentary record is sufficiently contradictory to allow a jury to resolve the disputes between the parties.

Additionally, Plaster's position as a store manager made him, at least, "a person with influence or leverage over the formal decisionmaker," if not the actual decisionmaker, because Stansfield's evidence, if believed, indicates that Plaster had the ability and inclination to manipulate job requirements to suit the needs his employees, except his pregnant employees. He encouraged all female employees to ask male employees for help lifting objects. Tillie Childress, especially, was allowed to request help. Plaster asked Paul Kosetka to return to the store even on light duty, even though formal policies may not have permitted Kosetka to return. Plaster forbade only the pregnant Stansfield from requesting help. Because Plaster determined which policies bound which employees, his decision to enforce lifting requirements only when Stansfield announced that she was pregnant indicates that he influenced the formal decision makers.

**B.    Stansfield produced circumstantial evidence of discrimination.**

Stansfield also presented a prima facie case of circumstantial evidence supporting her discrimination claims. To determine whether a plaintiff has made a sufficient showing of circumstantial evidence of discrimination to survive summary judgment a plaintiff must show that (1) she was a member of a protected class, (2) she was qualified for the position she lost, (3) she suffered an adverse employment action, and (4) that others similarly situated were more favorably treated. *Urbano,* 138 F.3d 204 (citations omitted). "Once the employer articulates a legitimate, nondiscriminatory reason for the employment action, however, the scheme of shifting burdens and presumptions simply drops out of the picture, and the trier of fact proceeds to decide the ultimate

question: whether plaintiff has proved that the defendant intentionally discriminated against her because of her sex." *Id.* (citations omitted).

It is undisputed that Stansfield was a member of a protected class who suffered the adverse employment action of being compelled to take unpaid leave. O'Reilly Automotive argues that Stansfield was not qualified for the position she lost and that she was treated just like other employees. However, Stansfield has presented evidence that raises a dispute of material fact on both counts. Stansfield's evidence consists of more than merely her subjective beliefs about the intent of O'Reilly Automotive because she identified specific instances in which Plaster treated other employees differently and explained that she was not subject to any lifting requirements until she announced her pregnancy.

In response to Stansfield's testimony, O'Reilly Automotive claims that "Plaintiff's claimed recollection alone is insufficient to raise a fact question in comparison to the clear and convincing evidence provided by the Defendant." Doc. 14 at 10-11. However, O'Reilly Automotive does not identify which court rule or line of cases allows a defendant to obtain the dismissal of a plaintiff's case on the basis of allegedly "clear and convincing" evidence, especially when that evidence relies on the testimony of the defendant's current employees. Therefore, this court will assume that each of Stansfield's recollections is absolutely accurate for the purpose of this motion, no matter how throughly documented the position O'Reilly Automotive takes might be.

First, O'Reilly Automotive argues that Stansfield was not qualified for her position and supports its argument by citing its formal policies. However, "a facially neutral policy may also be used to intentionally discriminate against employees because of their pregnancy if selectively applied to them." *Garcia v. Woman's Hosp. of Texas,* 143 F.3d 227, 231 (5th Cir. 1998). Thus, whether O'Reilly Automotive had a formal policy is not relevant if evidence indicates that it

enforced that policy selectively and it must prove what policies it actually enforced to determine whether Stansfield was qualified for her position.

No formal policies defined the new position that Stansfield assumed. Whether Stansfield reverted to being a driver specialist when she turned 21 is a question of fact that a jury must resolve because Stansfield indicates that she "never really resumed the delivery driver position." Doc. 19, Exh. A at ¶7. Furthermore, Stansfield was not aware of any policy governing her actual position and O'Reilly Automotive has not produced one. It has argued only that all positions at its store required employees to lift more than 20 pounds. However, Stansfield's sworn statement that her new position required "no lifting" requires a jury to determine whether Stansfield's position was a new position defined by the actual tasks to which O'Reilly Automotive assigned Stansfield or a position governed by lifting requirements implied by their presence in all formal job descriptions.

Furthermore, an employee's inability to meet lifting requirements may not have actually disqualified her from any job because O'Reilly Automotive may not have actually enforced its formal policies until Stansfield announced her pregnancy. Plaster and other supervisors encouraged women to seek the assistance of men when lifting heavy objects. In contrast, Plaster forbade Stansfield from requesting help after she announced her pregnancy. In other words, Stansfield's recollection establishes that O'Reilly Automotive had a *de facto* policy of excusing women, but not pregnant women, from its lifting requirements.

The gap between the formal policies that O'Reilly Automotive established and its actual behavior distinguishes Stansfield's case from many other claims against employers who refused to accommodate pregnant employees. *See Garcia,* 143 F.3d 227, *Urbano,* 138 F.3d 204, *Guarino v. Potter,* 102 Fed.Appx. 865, 868-69 (5th Cir. 2004), *Walker v. Fred Nesbit Distributing*

*Co.,* 156 Fed.Appx. 880 (8th Cir. 2005), *Spivey v. Beverly Enterprises, Inc.,* 196 F.3d 1309 (11th Cir. 1999), and *Carney v. Martin Luther Home, Inc.,* 824 F.2d 643 (8th Cir. 1987). In these other cases, an employer unambiguously required its employees to lift certain weights and an employee requested a dispensation from these requirements after discovering that she was pregnant. When the employer denied the employee's request, she sued claiming that the policy itself violated the PDA. The plaintiff did not challenge the application of the policy or the existence of the policy. In contrast, Stansfield argues that no policy existed for her unique job and that O'Reilly Automotive enforced its policies selectively. Stansfield's sworn statements supporting both arguments are sufficient to defeat a motion for summary judgment.

Second, O'Reilly Automotive argues that it treated all employees equally. However, "an employer violates the PDA when it denies a pregnant employee a benefit generally available to temporarily disabled workers holding similar job positions." *Spivey,* 196 F.3d at 1313 (citing *Byrd v. Lakeshore Hospital,* 30 F.3d 1380, 1383-84 (11th Cir.1994)). Stansfield raises a claim of more severe discrimination than the mere denial of a benefit "generally available to temporarily disabled workers" because she asked to do nothing more than continue working as she had. When asked "what are we going to do now," Stansfield responded, "Well, I thought I was going to go back to work." Doc. 19, Exh. A at ¶¶11-12. Plaster's decision to prohibit Stansfield from requesting a benefit, help lifting, that was available to all female employees, constitutes the enforcement of an otherwise legitimate policy in a discriminatory manner, thereby establishing the last element of Stansfield's prima facie case and raising a question of material fact regarding the legitimate non-discriminatory reason that O'Reilly Automotive offered for compelling Stansfield to take unpaid leave.

### C.  Stansfield has stated claims that survive a motion to dismiss.

Finally, O'Reilly Automotive argues that Stansfield has not stated a claim under the Family Medical Leave Act (FMLA). The Federal Rules of Civil Procedure permit a court to dismiss a plaintiff's case if the plaintiff fails to state a claim upon which relief can be granted. Fed. R.Civ. P. 12(b)(6). "[T]he fact that a plaintiff pleads an improper legal theory does not preclude recovery under the proper theory. When presented with a Rule 12(b)(6) motion to dismiss, the district court must examine the complaint to determine if the allegations provide for relief on any possible theory." *Doss v. South Cent. Bell Telephone Co.,* 834 F.2d 421, 424 (5th Cir. 1987) (citations omitted). Thus, O'Reilly Automotive's motion is not a motion to strike a particular cause of action, but a motion to dismiss the entire case. Because Stansfield has alleged facts that may entitle her to some relief, even if those facts may not grant her a right to recover under the FMLA, she may proceed.

Additionally, by forcing Stansfield to take leave before she requested leave, O'Reilly Automotive compelled her to exhaust her leave before she otherwise would have exhausted it. Consequently, O'Reilly Automotive interfered with Stansfield's rights to obtain leave as she needed it.

### IV.  Order

Because Stansfield's statements create material issues of fact that must be resolved by a jury, the motion by the Defendant, O'Reilly Automotive, is DENIED. Doc. 14.

SIGNED at Houston, Texas, this 19th day of April, 2006.

\

MELINDA HARMON
UNITED STATES DISTRICT JUDGE